Argued September 9; affirmed November 22, 1932

## BALLARD *v.* WALKER ET UX.

(16 P. (2d) 19)

*Oscar Hayter,* of Dallas, for appellant.

*Walter L. Tooze, Jr.,* of Portland (Vinton & Marsh, of McMinnville, on the brief), for respondent.

ROSSMAN, J. October 6, 1928, the plaintiff commenced an action in the circuit court wherein he alleged that one R. L. Walker, defendant in that action, and who is one of the two defendants in this action, had obtained a secret profit of $10,500 while acting as agent for this plaintiff in disposing of plaintiff's farm of 635 acres located in the state of Washington. The trial resulted in a judgment in favor of the plaintiff in the sum of $8,500, June 27, 1930. July 27, 1928, the said R. L. Walker executed and delivered to Mary E. Walker, his wife and co-defendant in this suit, two quitclaim deeds which conveyed to his wife tracts of land in Polk and Yamhill counties aggregating approximately 600 acres, the title to which for many years had been vested in the names of both by the entirety. These two deeds divested the husband of the title of all land in the state of Oregon previously owned by him, except 3⅛ acres of cranberry land located in Clatsop county which Walker testified was worth $5,000 June 27, 1928, but which he swore he sold in September of 1930 for $1,500. Walker testified that at approximately the time he executed the two aforementioned deeds he also transferred to his wife his automobile, all of the farm implements upon the above-described land and the balance in his bank account. Thus, when the plaintiff obtained his judgment Walker possessed no property in the state of Oregon except the cranberry land, and that, as is indicated by the foregoing, was sold shortly thereafter. At the time of the entry of the judgment the record title to the cranberry land was vested in the names of the two Walkers.

It is the purpose of this suit to set aside the two above quitclaim deeds on the ground that they were

executed for the fraudulent purpose of rendering Walker execution-proof. The two defendants insist that when these deeds were executed neither defendant knew of the plaintiff's claim and of his intent to sue. Both allege that Mrs. Walker parted with adequate consideration in support of the conveyances. Both of the Walkers testified that July 27, 1928, the two were estranged and effected a property settlement whereby Walker conveyed to his wife the properties in Polk and Yamhill counties, and she conveyed or transferred to him: (1) her interest in a tract of land in Idaho, the record title to one-half of which was vested in Walker (the other half interest was owned by an individual named Baker); (2) her interest in the aforementioned cranberry land; and (3) her interest in a corporation entitled the Walker-Baumgardner Company.

The issues awaiting decision are almost entirely issues of fact. The legal principles applicable to the controversy are so well settled that they present no occasion for further discussion. For recent decisions by this court see *Hill v. Harritt,* 140 Or. 86 (12 P. (2d) 1021); and *Marion Automobile Co. v. Brown,* 127 Or. 551 (272 P. 914). The evidence was thoroughly sifted out in the circuit court. Both the trial judge, who for many years had been a resourceful practitioner before his appointment to the bench a short time before, and the attorneys plied the witnesses with many questions. At the conclusion of the trial the court entered a decree for the plaintiff. We have read the transcript of testimony consisting of 332 pages with painstaking care. We have also examined the numerous exhibits consisting of writings of various kinds. Our study and analysis of this evidence brings us to the same conclusion as that of the trial judge. He saw the witnesses

and noted the many manifestations which either brought credit or discredit to them. An hour spent with the witnesses in the court room often produces a safer impression of where the truth lies than many hours of examination of the transcript of the witnesses' testimony. However, we notice that the transcript of Mrs. Walker's testimony, upon cross-examination, is interspersed with numerous notations by the court reporter of "witness hesitates" and "no answer." These notations occur even when the questions sought information that should have been freely forthcoming. In addition, many of her answers were vague or consisted of "I don't recall" and "I don't know." Answers of the type just noted were often made when previous answers or writings upon which she depended indicated that she must have possessed the information sought by the questions. Walker's testimony was even more unsatisfactory.

It will be recalled that the parties claimed that an estrangement had occurred which culminated in the conveyances of July 27, 1928. They contended that the conveyances or transfers brought to Walker property the equal in value of that which he gave, yet the value of what he received was so ephemeral that it shortly disappeared. The corporation vanished, the cranberry land, supposedly worth $5,000, was sold for $1,500, and, incidentally, Walker was unable to explain what became of the $1,500, thus casting serious doubt upon his assertion that the land sold for that sum. His explanation concerning the price which he had received for the Idaho land was so vague and confused that we are unable to ascertain his meaning. Thus, Walker was left with no assets whatever, but, according to his contention, he has become the hired man of his

wife, possessed of a perpetual right to the use of an automobile and to an inexhaustible supply of gasoline, oil, automobile up-keep, etc. He receives no wages whatever. Following the alleged estrangement and the transfers of July 27, 1928, the two Walkers continued to deport themselves toward one another and to deal with their property in almost precisely the same manner as before that occasion. Walker testified that their deportment was not "exactly" the same as before, but a reading of the testimony reveals no difference. They lived together, occupied the same bed when he was home, he used the same automobile as before, farmed the same land, disposed of the crops, used the same bank account, drew checks upon it and deposited money in it. A careful examination of the testimony indicates that, apart from the transfer to Mrs. Walker of the Polk and Yamhill county properties, and a change in the bank account, evidently intended to conceal R. L. Walker's interest in it, the only other change which occurred after July 27, 1928, was the fact that thereafter all new conveyances of property were taken in the name of Mrs. Walker alone. Yet, after a new piece of property had been acquired Walker proceeded to handle it or dispose of it in exactly the same manner as before the alleged property settlement.

Mary Walker insists that the evidence fails to prove that before July 27, 1928, she was aware of the plaintiff's claim against her husband and of his intention of enforcing it. Possibly the direct evidence offered in proof of this element of the case is not strong, but the indirect evidence is very persuasive. We shall mention one item. Walker, in obtaining the secret profit of $8,500, accepted a conveyance of 630

acres of land in Washington which was thereupon conveyed to his buyer. He also signed a note for $14,000, together with a mortgage. His wife signed the deed, note and mortgage with him, although at that time the alleged estrangement had already occurred. The $14,000 note was secured by a mortgage covering the Polk county land which, according to her contentions, she was insisting should be conveyed to her as a part of the property settlement. If they were, in fact, estranged at that time she would certainly have insisted upon an explanation of the $14,000 note and mortgage and of the source of the Washington property. In the midst of these transactions Mrs. Walker made entries in Walker's account book (she kept his books) of the very items that constituted the secret profits; in fact, some of these items were prefixed with the notation that they were commissions and some of them were accompanied with identifying details which associated them with this transaction. Incidentally, the plaintiff was an old-time friend and neighbor of the Walkers, and thus she was somewhat acquainted with his affairs. The contract for the commission was with the Walker-Baumgardner Company in which both Mr. and Mrs. Walker were stockholders and officers. Baumgardner, the third stockholder, was the owner of as much stock as the two Walkers. Had the transaction been regular the secret profit would have been entered in the books of the corporation and Baumgardner would have received his portion of it. But despite this fact, Mrs. Walker made the entries in Walker's books whereby he received all, and, since she and he regarded everything which the one possessed as the property of both, she now acquired half of this profit. In addition to this

circumstance there are others of like kind which also tend to show that Mrs. Walker must have known of the plaintiff's claim. But whether she did or not, there is evidence in the record which demands belief and which proves that the deeds were mere devices to which the parties attached no validity and which they regarded as shams for the purpose of defrauding Walker's creditors. .

Without reviewing the testimony further, we state our conclusion that the two conveyances above mentioned from R. L. Walker to his wife describing property, title to which had been previously vested in the names of the two by the entirety, were of the type proscribed by section 63-507, Oregon Code 1930, and that the plaintiff is entitled to the relief sought by his complaint. The decree of the circuit court will, therefore, be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.